# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8671 | **DATE** | 12/9/2002 |
| **CASE TITLE** | Mark White vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order on plaintiff's motion for summary judgment. Plaintiff's motion for summary judgment is granted. Commissioner's cross motion for summary judgment is denied. The cause is hereby remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 10 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 12/9/2002 | |
| | Copy to judge/magistrate judge. | 02 DEC -9 PM 4:53 | date mailed notice | |
| SM | courtroom deputy's initials | Date/time received in central Clerk's Office | SM mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARK WHITE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 01 C 8671 |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) Magistrate Judge Ian H. Levin |
| Defendant. | ) |

DOCKETED
DEC 1 0 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark White ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA") denying his application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI") under the Social Security Act (the "Act"). Before the Court are the parties cross-motions for summary judgment in the cause. For the reasons set forth below, the Court remands the cause for further proceedings consistent with this opinion.

## BACKGROUND FACTS

On August 28, 1992, Plaintiff filed concurrent applications for DIB[1] and SSI alleging that he became disabled, as of December 15, 1991, due to a combination of physical and mental impairments.[2] (R. 94-100, 121.) Plaintiff's applications for benefits were initially denied on

---

[1] For purposes of DIB, Plaintiff was insured through at least December 31, 1992.

[2] References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

November 17, 1992 (R. 101-08). Subsequently, on February 5, 1993, Plaintiff's request for reconsideration was also denied. (R. 109-115.) Plaintiff then filed a timely request for an administrative hearing (R.116-17), and on May 12, 1994, a hearing was held before an Administrative Law Judge ("ALJ"), at which time, the ALJ decided to remand the cause to the state agency for further consideration of Plaintiff's mental impairment(s). (R. 198-200, 455-60.)

On October 12, 1994, the state agency denied Plaintiff's applications (R. 203-05, 208-10) and on October 31, 1994, Plaintiff, again, filed a timely request for an administrative hearing. (R. 211.) On October 31, 1996, a hearing was held before a second ALJ.[3] (R. 29-93.) On March 20, 1997, a decision denying Plaintiff's benefits was rendered, not by the second ALJ, but by a third ALJ. (R. 19-24.) Plaintiff then filed a timely request for review of the hearing decision and, on October 30, 1998, the Appeals Council denied Plaintiff's request for review. (R. 9-10, 13-15.)

Subsequently, Plaintiff initiated civil action by filing a Complaint for Judicial Review in the

---

[3] When Plaintiff testified before this ALJ, he admitted to being a recovering alcoholic and drug abuser. (R. 50.) He reported that his childhood was permeated with a variety of stressors; including, beatings at the hands of his sisters and exposure to gang shootings. (R. 227.) The stress of his childhood drove him into the arms of the wrong crowd, and, in turn, the abusive substances such a crowd made available. Plaintiff testified that the drugs and alcohol "made [him] feel good," and provided an outlet of escape from the world around him. (R. 44.) Plaintiff further testified that in 1995 he quit using drugs and started therapy. (R. 50.) Although sobriety was clearly a necessary step towards functioning in the work world, Plaintiff continued to labor under a deep-seated depression for several more years. (R. 55.) The depression caused him to experience sporadic episodes of crying. (R. 56.) Plaintiff testified that the crying could ensue at any time, and when asked to explain the reason for his crying, he responded, "because of life." (R. 55.) Plaintiff's depression also caused him to experience periods of extreme lethargy. (R. 56.) During those periods Plaintiff would sleep for days at a time. (R. 56.) Then upon waking, he might "sit up and watch TV or . . . just sit up and just think." (R. 56.) He explained that with the lethargic depression, he did not feel like moving; he did not feel like he could get up. (R. 58.) Plaintiff thus asserts that his depressive lethargy was keenly illustrated by his testimony before the ALJ when he stated that he was unable to collect the public aid payments he was eligible for because he was unable to leave the house. (R. 60, 61.)

United States District Court for the Northern District of Illinois (pursuant to 42 U.S.C. § 405(g)) and, on August 17, 1999, a Magistrate Judge issued a court order remanding Plaintiff's case [*White v. Apfel*, No. 99 C 0523] in accordance with sentence four (4) of 42 U.S.C. § 405(g) pursuant to the parties' agreed stipulation for remand. (Pl.'s Mem. at 2.) The parties jointly stipulated that the matter be remanded for a new hearing and decision because Plaintiff had not been given an opportunity to appear at a hearing before the third ALJ. (Def.'s Mem. at 2.)

Following the remand order, in a notice of hearing dated April 11, 2000, this same third ALJ notified Plaintiff that she had scheduled a hearing for May 24, 2000 at 8:30 a.m. (R. 533-37.) The written notice advised Plaintiff that his request for hearing could be dismissed if he failed to appear, and advised him to contact the ALJ's office immediately if he could not appear on the scheduled day or at the scheduled time. (Def.'s Mem. at 2; R. 533.) The day before the scheduled hearing, on May 23, 2000, Plaintiff's attorney sent the ALJ a letter advising that Plaintiff's foreman, on the construction job that he held for less than a year, refused to give Plaintiff the morning of May 24, 2000 off to attend the hearing. (Pl.'s Ex. B, May 23, 2000 ltr fr Plaintiff's attorney to the ALJ.) Furthermore, Plaintiff's attorney explained, in the letter, that it was more likely that Plaintiff would be allowed time off during an afternoon rather than a morning to attend a hearing. (*Id.*) The ALJ, however, decided to go forward and refused to reschedule (or continue) the hearing. (R. 551-68.)

Plaintiff's counsel and two independent medical experts, Irving Slott, M.D. (internist) and Benjamin Blackman, M.D. (psychiatrist) appeared at the hearing on May 24, 2000. (R. 551-68.) Plaintiff, however, did not appear at the hearing. With regard to Plaintiff's absence, his attorney explained:

> [Plaintiff] is working, he is only seeking a closed period of benefits. Apparently he

had asked his employers to have today or at least this morning off and my
understanding is he was told yesterday that they would not give him the time off.
And that was communicated to me yesterday afternoon. (R. 551.)

Plaintiff's attorney further indicated that Plaintiff was seeking a closed period of benefits covering December 15, 1991 through December 1, 1999. (R. 552.)

At the hearing, Dr. Slott testified that he found no objective evidence in the record which would indicate that Plaintiff was disabled during the relevant period. (R. 560-61.) Dr. Blackman testified that, in his opinion, Plaintiff met medically determinable mental impairment Listing 12.09B primarily because of his poly-substance dependence that was most closely associated with a depressive disorder. (R. 566.) Furthermore, Plaintiff's attorney advised the ALJ that she was "not going to ask . . . [for] a supplemental hearing but . . . [would] endeavor to . . . get an affidavit from . . . [Plaintiff] and submit that for the record." (R. 566-67.) The ALJ granted Plaintiff's attorney's request to hold open the record until June 27, 2000 so that she could submit a closing memorandum and an affidavit from Plaintiff. (R. 566-67.) On July 7, 2000, however, Plaintiff's attorney faxed the ALJ a letter requesting that the ALJ schedule a supplemental hearing so that Plaintiff would have an opportunity to testify before her.[4] (R.546-48.)

---

[4]Neither Dr. Slott nor Dr. Blackman had been present at the hearing before the second ALJ in 1996, so they were proceeding without the benefit of hearing any testimony from Plaintiff. When questioned about whether his testimony would change, if between the period Plaintiff became sober and the time he was able to start working, he continued to battle his depressive demons, Dr. Blackman responded that he did not know because he had heard no evidence regarding that period of time. (R. 566.) Plaintiff, therefore, asserts that his testimony is crucial. Although Plaintiff's attorney had initially indicated that Plaintiff's affidavit might suffice (R. 566), upon reflection, Plaintiff's counsel thought otherwise. In her post-hearing letter to the ALJ, Plaintiff's attorney wrote:

> Counsel recognizes the utility of taking testimony from those experts present at the date and time of the hearing; however, . . . [Plaintiff] has still not waived his right to appear and testify and contends that he is indeed an indispensable witness in this

4

In her decision dated July 26, 2000, the ALJ denied Plaintiff's attorney's request for a supplemental hearing because Plaintiff had not established good cause for not appearing at the scheduled hearing on May 24, 2000. 20 C.F.R. §§ 404.936; 416.1436. (R. 488.) For instance, the ALJ noted that good cause had not been established because Plaintiff had not notified her regarding his scheduling conflict until the time set for the hearing (i.e., May 23, 2000) even though the notice of the hearing date and time was sent to Plaintiff on April 11, 2000. (R. 488.) Moreover, the ALJ determined that Plaintiff's condition during the closed period of disability was established by other documentary evidence available to her.[5] (R. 488.) Furthermore, the ALJ determined that because Plaintiff was requesting a closed period of disability that any testimony from him would only focus on the past. (R. 488.) Ultimately, the ALJ decided that Plaintiff was not disabled during any part

---

matter. To that end, counsel moves that a Supplemental hearing be scheduled for the purpose of memorializing . . . [Plaintiff's] testimony for the record . . . It should be kept in mind that one of the reasons government counsel agreed to remand this case while it was pending before Magistrate Judge Denlow in Federal Court is that the Agency's decision denying [Plaintiff's] application was rendered by an ALJ who had not heard [Plaintiff's] testimony, yet found against his credibility. If he is not permitted to present testimony at this juncture, and a favorable decision is not rendered, then once again he will have been denied benefits by an ALJ who never heard his testimony. Such an outcome would be unfair and would be a denial of this gentleman's right to procedural due process.

Please consider these comments and have your staff contact me so that the date and time for a supplemental hearing, at which the claimant can testify, can be scheduled.

(R. 546-48.)

[5]One of the examples of good cause cited in the regulations pertains to those circumstances where a witness, who will testify to facts material to the case, is unavailable to attend the scheduled hearing and the evidence cannot otherwise be obtained. 20 C.F.R. §§ 404.936(d)(4); 414.1636(d)(4). Herein, however, the ALJ determined that the evidence could be obtained by documentary evidence. (R. 488.) Specifically, in her decision, the ALJ stated that reports from consultative examinations from January of 2000 described Plaintiff's depression and substance abuse at length. (R. 488.) Consequently, the ALJ found that these reports were sufficient. (R. 488.)

of the relevant period (i.e., December 15, 1991 though December 1, 1999). (R. 493.)

On August 9, 2000, Plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council. (R. 478-79.) In comments to the Appeals Council, Plaintiff delineated the procedural errors in his case which warranted a remand. (R. 470-72.) On August 3, 2001, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final determination of the Commissioner. (R. 463-64.) Following the grant of extension of time to file, Plaintiff, again, initiated civil action by filing a second Complaint for Judicial Review in the United States District Court for the Northern District of Illinois (pursuant to 42 U.S.C. § 405(g)).

## THE ALJ'S DECISION

As is pertinent here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time during the closed period of disability (i.e., December 15, 1991 though December 1, 1999). (R. 492.) The ALJ further found that Plaintiff's alcohol abuse was a severe impairment as delineated by regulation requirements. (20 C.F.R. §§ 404.1521; 416.921; R. 492.) Moreover, during the closed period of disability, Plaintiff's impairment met listing 12.09. (R. 492.)

The ALJ determined that Plaintiff's substance abuse was material to the finding of disability. (R. 492.) In addition, the ALJ found that Plaintiff's depression was secondary to substance abuse and, without considering substance abuse, Plaintiff did not have a severe impairment. (R. 492.) The ALJ further determined that Plaintiff's allegations regarding his limitations were not totally credible. (R. 493.)

Accordingly, the ALJ determined that Plaintiff was not under a disability during the closed period of disability. (R. 493.)

## LEGAL STANDARDS

## I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390. Conclusions of law, however, are not entitled to deference. Thus, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II. STATUTORY AND REGULATORY FRAMEWORK

To receive disability benefits, SSI and DIB claimants must be "disabled" as defined by the Act. *See* 42 U.S.C.§ 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir. 1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a

claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See Brewer*, 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's residual functional capacity ("RFC") and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96-8p (1996). If the claimant can perform his past relevant work, he will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of his age, education, job experience and functional capacity to work -- is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer*, 103 F.3d at 1391.

## ANALYSIS

Plaintiff seeks remand of the ALJ's decision finding that he is not disabled.

Plaintiff argues that the ALJ's decision cannot be affirmed because it was premised on legal error; namely, the ALJ's failure to afford Plaintiff a full and fair hearing. Specifically, Plaintiff contends that he was not afforded a full and fair hearing because the ALJ refused to allow him to reschedule his May 24, 2000 hearing (to allow Plaintiff to appear and testify) and, then, denied Plaintiff's request for a supplemental hearing whereby he would have had the opportunity to testify regarding his disabling condition(s). (*See generally,* Pl.'s Mem. & Reply.) Defendant, on the other hand, asserts that the ALJ afforded Plaintiff a full and fair hearing because the ALJ provided him with an opportunity to appear at a hearing, and submit an affidavit or other sworn statement after the May 24, 2000 scheduled hearing. (Def.'s Mem. at 5.) Defendant, thus, contends that just because Plaintiff did not avail himself of either opportunity does not constitute a denial of Plaintiff's right to a full and fair hearing. (*Id.*)

The Court agrees with Plaintiff and finds that he was not afforded a full and fair hearing as a result of not being given an opportunity to testify at his hearing. First, the Social Security Act requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits is denied. *Stoner v. Secretary of Health and Human Services,* 837 F.2d 579, 760-61 (6th Cir. 1988) (citation omitted); 20 C.F.R. § 404.950(a); *see also Binzen v. Barnhart,* No. 01 C 2716, 2002 WL 31324061, at *7 (N.D. Ill. Oct. 16, 2002) ("[a] claimant is entitled to personally appear before the ALJ before her claim for benefits is denied"). Thus, based on SSA law and regulations, in the circumstances here, Plaintiff had a right to appear at a hearing where he could present testimony regarding his disability claim(s). Therefore, because the ALJ's decision was not based on a full and fair hearing, procedural due process considerations as well as statutory requirements mandate that the cause be remanded so Plaintiff can be afforded an opportunity to

testify before the ALJ.[6]

Next, the Court notes, as discussed, that this is the second time that Plaintiff has not been afforded an opportunity to testify at an administrative hearing regarding his claim(s) of disability. Specifically, on August 17, 1999, the prior Magistrate Judge issued a court order remanding Plaintiff's case [*White v. Apfel*, No. 99 C 0523] to the SSA pursuant to the parties' agreed motion for remand. At the time, the parties jointly stipulated that the matter should be remanded for a new hearing and decision because Plaintiff had not been given an opportunity to appear and testify at a hearing before the ALJ. (Def.'s Mem. at 2.) Moreover, in a subsequent related order in that case (award of attorney's fees), the prior Magistrate Judge stated:

> The Commissioner's position was not substantially justified because the Appeals Council inexplicably denied Plaintiff's request for review, thereby necessitating this litigation. In a comprehensive request for review, Plaintiff's counsel clearly pointed out that despite one ALJ having presided at the hearing, a different ALJ wrote the decision. In the letter requesting review, Plaintiff's counsel pointed out that the second ALJ: 1) did not indicate that she had not presided at the hearing; 2) did not claim that she listened to the tape of the hearing; and 3) without having seen or heard any witnesses, she found Plaintiff was not credible. Plaintiff's counsel concluded this opening paragraph of the letter stating: "It would seem impossible, however, for her

---

[6]A meaningful "opportunity to be heard" is an essential component of procedural due process of law. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Accordingly, it is basic that a decision that does not afford procedural due process must be remanded by the reviewing court. As the Seventh Circuit has stated:

> ... [T]he fact that the court's judgment may be justified on the merits does not obviate the requirement of a fair trial ... But no judgment is just, if not obtained by due process of law; otherwise, courts could enter judgments without trial ... *The recognition of the principle is as essential in proceedings before administrative agencies as it is before courts.* (citations omitted) *Inland Steel Co. v. Nat'l Labor Relations Bd.*, 109 F.2d 9, 20 (7th Cir. 1940)(emphasis added).

As a result of procedural due process errors in *Inland Steel*, the court set aside the National Labor Relations Board's order in its entirety and remanded the case for a new hearing. *Id.* at 21. Similarly, in the case at bar, procedural due process errors require that the cause be remanded so that Plaintiff be afforded a full and fair hearing.

10

to make any type of credibility finding when she was not at the hearing. On this fact alone, the decision should be reversed." In addition, the letter went on to discuss in detail the merits of the case.

The second ALJ violated the Commissioner's policy and established law by rendering a decision without first providing Plaintiff an opportunity to appear before her before deciding the case and in making credibility findings without having had an opportunity to observe Plaintiff's demeanor. *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996) ("The ALJ heard the witnesses and was in the best position to evaluate their credibility."); *Kelly v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989)("Credibility findings are reserved for the ALJ, in part because the ALJ is able to observe the witness.") In its response brief to Plaintiff's fee petition, the Commissioner refers to this issue and states: "We recommended that the matter be remanded for this reason also." (Record citations omitted.) *White v. Apfel*, No. 99 C 523, 2000 WL 106700, *2 (N.D. Ill. Jan. 25, 2000).

Thus, in issuing her July 26, 2000 decision herein, the ALJ again, for the second time, failed to provide Plaintiff with his right to a full and fair hearing (A) by denying Plaintiff the opportunity to appear and testify and (B) by once again assessing the Plaintiff's credibility without benefit of Plaintiff's appearance and testimony (R. 493). Moreover, the ALJ failed to comply with the court's stipulated remand order (which order was based on this ALJ having originally rendered a decision without providing Plaintiff an opportunity to appear and testify).

With respect to remand, Plaintiff also argues that he established good cause for requesting a change in the date and time of his administrative hearing, which had been scheduled for May 24, 2000. (Pl.'s Mem. at 7-8.) Specifically, Plaintiff asserts that even though the ALJ stated (in her July 26, 2000 decision) that the "Notice of Hearing" for the May 24, 2000 hearing was mailed to Plaintiff on April 11, 2000, and therefore, he could have "immediately" notified the ALJ's office to request that his hearing be rescheduled, the ALJ's statement ignores the facts in the case. (*Id.* at 8.) For instance, at the time, Plaintiff had been working at his construction job for approximately six months and even though he asked his foreman for the morning of May 24, 2000 off, at least several weeks

in advance, he was not informed until the day before the hearing that he would not be given the time off. (*Id.*)

Defendant, on the other hand, asserts that the ALJ concluded that Plaintiff had not established good cause for continuing or rescheduling the hearing. (Def.'s Mem. at 6.) Specifically, the SSA paid two medical experts for their appearance at Plaintiff's hearing which he knew about for several weeks. (*Id.*) Moreover, Defendant contends that the regulations provide that "the impact of the proposed change [of the hearing date] on the efficient administration of the hearing process" is a factor to be weighed in deciding whether a claimant has good cause for changing the date and time of a scheduled hearing. 20 C.F.R. §§ 416.1436(d); 404.936(d). Therefore, Defendant contends that with the large number of pending cases[7], the appearance of two medical experts at the appointed date

---

[7]Defendant points to the fact that the SSA had 436,000 hearings pending at the end of fiscal year 2001. (Def.'s Mem. at 6.) *See* Social Security Administration, Fiscal Year 2003 Annual Performance Plan. (Def.'s Ex. D at 155.) For example, the average SSA ALJ had an estimated 46 hearing dispositions per month and an estimated 354 pending hearing dispositions in fiscal year 2001. (Def.'s Ex. D at 133.)

In response to Defendant's delineation of the number of administrative hearings, Plaintiff's reply set forth what Plaintiff asserts are several illustrations of how the Offices of Hearings and Appeals actually function on a day-to-day basis. (Pl.'s Reply at 2.) For instance, in the case of one claimant, a hearing was held before an ALJ in Evanston, Illinois in April 2002. (*Id.*) Following the hearing, the ALJ decided that he needed expert testimony on the mental aspects of the claim, so in mid-October 2002, a supplemental hearing was held at which a psychologist was asked to testify. (*Id.*) During the supplemental hearing, counsel attempted to cross-examine the psychologist and the ALJ disallowed the questioning, holding that the proper expert would be a psychiatrist rather than a psychologist. (*Id.* at 2-3.) The ALJ then indicated that a second supplemental hearing would be held at some future date. (*Id.* at 3.) Moreover, following a federal court remand, in another case, *Neely v. Apfel*, No. 99 C 4132, 2000 WL 1285427 (N.D. Ill. Sept. 11, 2000) there had already been one supplemental hearing and the ALJ (who is located in the same hearing office as the ALJ herein) has, on his own motion, scheduled a second supplemental hearing despite the fact that extensive testimony from both Neely and three different experts, had already been memorialized for the record. (*Id.* at 3.) Therefore, Plaintiff asserts that the SSA's regulations provide for the ALJs to hold supplemental hearings (20 C.F.R. § 404.944) and Defendant cannot argue that a supplemental hearing represents too great of an administrative cost, in this case, where Plaintiff has yet to have his claim decided by

12

and time, and Plaintiff's failure to provide any solid assurance that he would appear at a rescheduled hearing, the ALJ was entirely within her discretion under the regulations in deciding that Plaintiff had not established good cause for continuing the hearing. (*Id.*)

The Court agrees with Plaintiff and finds that he established good cause with respect to his request to reschedule or continue his hearing. Plaintiff's reason for requesting that his hearing be rescheduled or continued was based on the fact that he could not get time off from his construction job. Moreover, Plaintiff was not informed by his foreman that he could not have the morning off to attend his hearing, until May 23, 2000, just one day before the scheduled hearing. Thus, considering Plaintiff's reason for requesting the change, the facts supporting it, and the impact of the proposed change on the efficient administration of the hearing process, the ALJ should have afforded Plaintiff an opportunity to either reschedule or continue his hearing so that he would have an opportunity to testify before her.[8] 20 C.F.R. §§ 416.1436(d); 404.936(d).

Defendant also contends that with respect to the issue of good cause, that the ALJ specifically concluded that example number four (4) of 20 C.F.R. § 404.936(d) was not applicable to the circumstances of this case. (Def.'s Mem. at 6.) For instance, example number four (4) identifies one type of circumstance "which [a claimant] might give for requesting a change in the time or place of the hearing: [a] witness who will testify to facts material to [a claimant's] case [is] unavailable to

---

an ALJ who has listened to his testimony or even given him an opportunity to testify. (*Id.*)

[8]The Court further notes that, in effect, the ALJ refusal to reschedule or continue the hearing may have necessitated, as Plaintiff argues, that Plaintiff choose between attending his hearing and losing his job (the first job he had been able to sustain in eight years) or keeping his job but being deprived of the right to a full and fair hearing. Requiring Plaintiff to make such a choice would be contrary to not just the law but also to SSA policy which has been to encourage disabled workers to return to the workplace. *See e.g.,* Ticket to Work and Work Incentives Improvement Act of 1999 (P.L. 106-170).

13

attend the scheduled hearing and the evidence cannot be otherwise obtained." 20 C.F.R. § 404.936(d)(4). (*Id.* at 6-7.) Defendant thus contends that the ALJ determined that evidence of Plaintiff's condition could be obtained from the documentary record and that his retrospective testimony was not necessary to assess his polysubstance abuse and its materiality to his alleged depression. (Def.'s Mem. at 6; R. 488.) In her July 26, 2000 hearing decision, the ALJ noted that the consultative examiner diagnosed Plaintiff with Alcohol Dependency Disorder (not depression) which cannot, by itself, provide a basis for a period of disability and an award of benefits. Thus, according to Defendant, the ALJ had discretion in finding that the consultative examiner's report was adequate to determine that Plaintiff's polysubstance abuse was material to his disability during the closed period at issue.

The Court disagrees with Defendant's proposition and finds that Plaintiff's testimony was needed at a hearing in order to properly assess the basic issue before the ALJ; namely, whether Plaintiff could be found disabled without drug addiction and/or alcoholism ("DA & A")[9] being material to a finding of disability. Dr. Blackman initially testified that the record (without Plaintiff's testimony) seemed to show that an individual who had achieved sobriety and was able to function in the workplace would not be disabled, but for DA & A. (R. 562-66.) However, on cross-examination, Dr. Blackman admitted that he did not know or could not answer whether his testimony would be the same if the individual had been continuing to fight his depressive demons for two years

---

[9]Public Law (P.L.) 104-121, the Contract with America Advancement Act of 1996, revised §§ 223(d)(2) and 1614(a)(3)(A) of the Social Security Act. Specifically, Section 105 of that law provides that beginning March 29, 1996, if DA & A is a contributing factor material to the determination that an individual is disabled, that individual is not eligible to receive benefits. In the case of dual diagnosis, if DA & A and another mental impairment cannot be separated to a reasonable degree of medical certainty, the claimant is found to be eligible and DA & A is not material.

14

between achieving sobriety and returning to the workforce. (R. 566.) Thus, if the ALJ had afforded Plaintiff the opportunity to testify, he potentially could have provided Dr. Blackman with the information he lacked.

The Court further notes that even though Dr. Blackman might not have found Plaintiff's testimony compelling and the ALJ may not have found Plaintiff's testimony credible, at the very least, Plaintiff's testimony would have been considered and the ALJ would have afforded Plaintiff a full and fair hearing by which she could have made a fair determination regarding his disability claim(s). The ALJ, however, did not allow Plaintiff the opportunity to present testimony on his own behalf and without that testimony, she lacked an adequate basis for finding against his credibility. *See e.g., Kelly v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) ("Credibility findings are reserved for the ALJ, in part because the ALJ is able to observe the witness"). Herein, inappropriately, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible even though he never testified before her.

In closing, a basic tenet regarding social security disability hearings is that "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (citation omitted); *see also Chapman v. Barnhart*, 189 F.Supp.2d 795, 803 (N.D. Ill. 2002). As discussed, the Court finds that Plaintiff's testimony, particularly regarding his emotional/psychological condition after he achieved sobriety, (i.e., to clarify precisely when he achieved sobriety) was required to complete the record. Consequently, the ALJ's July 26, 2000 decision is not based on a fully developed record and includes a denial of Plaintiff's procedural due process right to a full and fair hearing. *See e.g., Ray v. Bowen*, 843 F.2d 998, 1007 (7th Cir. 1988)(in a case involving a plaintiff who had a history of substance abuse, the ALJ rendered a decision that

was not based upon a fully developed record and the court remanded, stating: "[t]hough [plaintiff] has no analogous due process right to disability benefits, we believe he is entitled to a fair hearing on this claim and, ultimately, justice").

## CONCLUSION

In view of the foregoing, the Court grants Plaintiff's Motion for Summary Judgment insofar as it requests a remand and denies Defendant's Motion for Summary Judgment. Accordingly, the cause is remanded to the Commissioner for further proceedings consistent with this opinion.

ENTER:

*Ian H. Levin*

IAN H. LEVIN
U.S. Magistrate Judge

Dated: December 9, 2002